UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

GULF COAST BANK AND TRUST CO.,[1]          :
                                           :
                            Plaintiff,     :       REPORT AND
                                           :       RECOMMENDATION
              - against -                  :
                                           :       11-CV-5023 (RMB) (RLE)
ASESD, LLC, NORMAN KAISH, &                :
LEONARD TAUB,                              :
                                           :
                            Defendants.    :
_____

To the HONORABLE RICHARD M. BERMAN, U.S.D.J.:

## I.       INTRODUCTION

On July 14, 2011, Bank of America, N.A. ("BofA") brought this action against

Defendants ASESD, LLC ("ASESD"), Norman Kaish ("Kaish"), and Leonard Taub ("Taub")

alleging breach of contract resulting from ASESD's failure to pay: (1) the remainder of the

principal owed on an Amended and Restated Promissory Note executed by ASESD in favor of

BofA (the "Loan"); (2) the accrued and default interest on the loan; and (3) any accruing interest,

default interest, late charges, attorneys' fees, and costs due to BofA under the applicable Loan

documents. BofA also alleged breach of guaranty resulting from Kaish and Taub's failure to pay

any sum due to BofA pursuant to their respective guaranties which made them jointly and

severally liable for any ASESD loan default. ASESD and Kaish failed to answer BofA's

Complaint, and on June 19, 2012, the Honorable Richard M. Berman entered a default judgment

against Defendants[2] and referred the case to the undersigned for an inquest on damages, interest,

---

[1] By Order dated January 22, 2014, Gulf Coast Bank and Trust Company was substituted as the Plaintiff and Bank of America was terminated, pursuant to Rule 25(c) of the Federal Rules of Civil Procedure and Local Civil Rule 1.4. (*See* Doc. No. 58.)

[2] Default judgment was not sought against Taub because Taub filed an answer to the Complaint and is a debtor in bankruptcy protected by the automatic stay provision in the United States Bankruptcy Code. (*See* Aff. for J. By Default ("Aff.") ¶ 1.)

attorneys' fees, and costs.  On or about July 30, 2013, BofA sold, assigned, and conveyed to Gulf Coast Bank and Trust Company ("Gulf") all rights, title, and interest in the Loan.  (Decl. Marie Polito Hofsdal ("Hofsdal Decl.") ¶ 10.)  For the reasons that follow, I recommend that judgment for Gulf be entered in the amount of **$446,697.53**.

## II.     BACKGROUND

### A.     Factual History

On December 11, 2006, the United States Trust Company ("U.S. Trust"), now a part of BofA, extended a term loan facility to ASESD in the amount of $1,518,000, with interest accruing ("Term Loan").  (Compl. ¶ 8.)  ASESD executed an Amended and Restated Promissory Note ("Term Note") in favor of U.S. Trust.  (*Id.*)  As collateral and security for the payment of the amount due under the Term Loan, ASESD executed an Extension and Modification Agreement in favor of BofA, which combined two existing mortgages assigned to U.S. Trust and created a lien in the amount of $1,518,000 on Units 301 and 602 on the real property known as 154-162 Attorney Street in Manhattan (collectively, the "Mortgaged Premises").  (Compl. ¶ 10.) Kaish and Taub executed Commercial Guaranties (the "Guaranties") in favor of U.S. Trust.  (*Id.* at ¶ 13.)  The Guaranties provided that Kaish and Taub, "jointly and severally, absolutely and unconditionally guaranteed to BofA"; that the Loan extended to ASESD be repaid; all terms and conditions of the Term Loan be satisfied; and, in case of default, Kaish and Taub would be held liable for any of ASESD's outstanding payments or obligations under the Term Loan.  (Compl. Ex. B at 1.)  BofA was the holder of the Term Note until it sold, assigned, and conveyed the Loan to Gulf on July 30, 2013; on that date, Gulf became the holder of the Note and related Loan documents.  (Hofsdal Decl. ¶ 12.)

From June 1, 2009, through April 1, 2010, ASESD failed to make payments due under the Term Loan, which constituted a default.  (Compl. ¶ 15.)  BofA provided ASESD with an

opportunity to cure its default, but ASESD failed to make payments. (*Id.* at ¶ 17.) BofA and ASESD subsequently entered into negotiations, after which BofA allowed ASESD to sell the property and to: (1) use the proceeds to pay BofA the amount owed under the Term Loan; and (2) collect any deficiency balance remaining. (*Id.* at ¶ 19.)

In early January, 2011, ASESD sold the Mortgaged Premises for an aggregate amount of $1,604,000. (*Id.* at ¶ 20.) On January 12, 2011, ASESD returned $1,305,870.34 of the Mortgaged Premises' sale proceeds to BofA as payment for its indebtedness. (*Id.* at ¶ 21.) On February 23, 2011, BofA demanded that ASESD pay the deficiency of the balance within thirty days. (*Id.* at ¶ 22.) Neither ASESD nor Kaish have paid any sum of money for the remaining indebtedness. (Compl. ¶ 23.)

## B.    Procedural History

BofA brought this action alleging ASESD's breach of contract and Kaish and Taub's breach of their Guaranties. After Judge Berman entered a default judgment against ASESD and Kaish, the undersigned held an inquest hearing on November 15, 2012, to determine damages. (Hofsdal Decl. ¶ 8.) Following the inquest hearing, BofA submitted proof of the amount due. (Second Supp. Decl. Marie Polito Hofsdal ("Hofsdal Second Supp. Decl.") ¶¶ 3, 4.) BofA seeks a total amount of $451,885.83 in damages. (*Id.* at ¶ 7.) This amount includes: (1) the unpaid principal of the ASESD Term Loan in the amount of $211,351.40; (2) the accrued and unpaid interest due prior to the application of the Mortgaged Premises' sale proceeds to the balance of the ASESD Term Loan on January 12, 2011, at a rate of six percent (or $35.23 per diem), in the amount of $154,458.30; (3) the accrued and unpaid interest on the liquidated amount from January 13, 2011, to June 19, 2012, in the amount of $18,212.19; (4) attorneys' fees and costs from the beginning of counsel's representation of BofA in this matter through May 29, 2012, in the amount of $58, 835.69 and; (5) attorneys' fees and costs incurred from May 29, 2012, until

November 2012, for additional services rendered in the amount of $9,028.25. (Supp. Decl. of Marie Polito Hofsdal ("Hofsdal Supp. Decl.") ¶¶ 4-5; *see also* Aff. ¶ 10; Hofsdal Decl. ¶¶ 6, 10.) In addition to these damages, BofA also seeks "post-judgment interest at a lawful rate on the total amount due Plaintiff as of the date of entry of default judgment until the same be paid and satisfied." (Hofsdal Second Supp. Decl. ¶ 7.)

On or about July 30, 2013, BofA sold, assigned, and conveyed to Gulf Coast Bank and Trust Company ("Gulf") all right, title, and interest of BofA in the Loan, making Gulf the holder of the Note and related operative Loan documents. (Hofsdal Decl. ¶¶ 10, 12; Compl. Ex. I.) BofA executed an Assignment of Judgment on August 20, 2013, assigning Gulf the June 19 Default Judgment. (Hofsdal Decl. ¶ 11.)

On January 3. 2014, Gulf requested that an order be entered pursuant to Rule 25(c) of the Federal Rules of Civil Procedure and Local Civil Rule 1.4(i) to substitute Gulf as Plaintiff in the place of BofA, to amend the caption accordingly, and to retain Wilson Elser, formerly counsel to BofA in this matter, to represent it. (Notice of Mot. for Substitution of Pl. ("Mot. for Substitution") Doc. No. 53.) The Court granted the motion on January 22, 2014. (*See* Doc. No. 58.)

### III.     DISCUSSION

#### A.     Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. First, the parties to this matter are diverse for purposes of jurisdiction: Gulf is a Florida corporation headquartered in Louisiana; ASESD is incorporated and headquartered in New York; and Kaish is a New York resident. (Compl. ¶¶ 5, 6.) Additionally, Gulf seeks damages in the amount of $451,885.83, thus satisfying the amount in controversy requirement in a diversity action. (Holfsdal Second Supp. Decl. ¶ 7.) Venue is proper in this Court pursuant to 28 U.S.C.

4

§ 1391, because both Defendants are residents of the Southern District of New York and a substantial part of the events giving rise to the original claim occurred in the Southern District of New York.

**B.     Default Judgment and Inquest Standard**

A party may move for a default judgment against an adversary who fails to answer or appear. Fed. R. Civ. P. 55(b). Following a default judgment, all well-pled factual allegations of the complaint, except those relating to damages, are accepted as true. *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993). A factual allegation will be deemed not well-pled only in "very narrow, exceptional circumstances." *Trans World Airlines, Inc. v. Hughes*, 308 F. Supp. 679, 683 (S.D.N.Y. 1969), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973).

A court must conduct an inquest in order to determine the amount of damages with reasonable certainty, and it may make such determination without a hearing, "as long as it [has] ensured that there is a basis for the damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Accordingly, the Court may rely on Gulf's affidavits and documentary evidence in determining the reasonableness of the damages requested. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993).

**C.     Liability**

**1.     ASESD breached its contract with BofA.**

"Under New York Law, to prove a claim for breach of contract a party must show: (1) existence of a valid contract, (2) due performance, (3) breach by the other party, and (4) damages suffered as a result of the breach." *First Investors Corp. v. Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). In this case, the allegations set forth in the Complaint and the supplemental

declaration in support of the request for damages establish that on or about December 11, 2006, ASESD executed an Amended and Restated Promissory Note in favor of U.S. Trust in the amount of $1,518,000, plus interest. (Compl. ¶ 8; Compl. Ex. B.) On the same date, Kaish and Taub each executed a Commercial Guaranty in favor of U.S. Trust, in which they jointly and severally guaranteed full payment on the Term Loan. (Compl. ¶ 13; Compl. Ex. F.) Gulf is the current owner and holder of the Note and Guaranties. (Compl. ¶¶ 9, 14.) ASESD failed to make payment on the loan from June 1, 2009, through April 1, 2010, constituting an event of default under the Term Loan. (*Id.* at ¶¶ 15, 17; Compl. Ex. G.) After the Parties' negotiation, BofA granted ASESD permission to sell mortgaged property designated as collateral and security for the amount due on the Term Loan. (Compl. ¶ 19.) After the sale, ASESD gave BofA $1,305,870.34 of the sale proceeds as payment towards the Term Loan balance. (*Id.* at ¶ 21.) On February 23, 2011, BofA demanded payment on the amount remaining due on the Term Loan. (*Id.* at ¶ 22; Compl. Ex. J.) Defendants failed to make payment on the outstanding balance. (Compl. ¶¶ 22, 23.) Accordingly, the allegations in the Complaint support a finding that ASESD breached its contract with BofA.

### 2.    Kaish has breached the December 11, 2006 guaranty.

In New York, a *prima facie* case for breach of a guaranty "is established by demonstrating (1) an unconditional guaranty; (2) the underlying debt; and (3) failure of the guarantor to perform under the guaranty." *See On the Move, Inc. v. Trucknology, Inc.*, No. 08 -CV- 2533 (DAB) (JCF), 2011 WL 2020257, at *3 (S.D.N.Y. Apr. 28, 2011) (citing *Buffalo & Erie Cnty. Reg'l Dev. Corp. v. World Auto Parts, Inc.*, 306 A.D. 857, 858 (4th Dep't 2003); *Kensington House Co. v. Oram*, 293 A.D.2d 304, 304-05 (1st Dep't 2002)). Here, the BofA and the Defendants agreed that their rights and obligations would be governed by federal

law, and to the extent not preempted by federal law, New York law.  (Compl. ¶¶ 10, 11; *see also* Compl. Ex. F at 3.)

Here, Kaish's December 11, 2006 guaranty "absolutely and unconditionally guarantees full and punctual payment . . . and the performance and discharge of all Borrower's obligations under the Note." (Compl. Ex. F at 1.)  The unpaid portion of the Note reflects the underlying debt. (Compl. ¶ 13; *see also* Compl. Ex. B.)  Kaish failed to perform under the guaranty by failing to make payment for the balance due under the Term Loan.  Accordingly, Gulf has established a prima facie case for Kaish's breach of commercial guaranty, and that an enforceable security guaranty exists against Kaish for the total indebtedness of ASESD owed to Gulf.

**D.      Computation of Damages**

**1.      Gulf's damages for ASESD's breach of contract**

Damages for breach of contract are determined by calculating the "amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995).  Additionally, under New York law, where the breach of contract is a failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract plus interest.  *See Scavenger, Inc. v. GT Interactive Software Corp.*, 289 A.D.2d 58, 58-59 (1st Dep't 2001).

Kaish executed a commercial guaranty promising: (1) the "punctual payment and satisfaction of the indebtedness of Borrower to Lender" and (2) the "performance and discharge of all Borrower's obligation under the Note and the Related Documents" (Compl. Ex. F at 1). The outstanding balance on the Term Loan is $211,351.40.  (Aff. ¶ 10.)  Additionally, the Note

provides for interest on the unpaid principal at six percent per annum, along with an increase of two percent upon default.[3] (Compl. ¶ 31; Compl. Ex. B at 1.)

Based on Plaintiff's submissions, Gulf is entitled to recover: (1) the outstanding balance of the principal of the Term Loan, in the amount of $211,351.40; (2) unpaid interest on the principal amount of the Term Loan that accrued at a rate of six percent prior to the application of the Mortgaged Premises' sale proceeds to the balance of the Term Loan on January 12, 2011, in the amount of $149,270;[4] and (3) unpaid interest on the principal of the Term Loan from January 13, 2011, to the entry of default judgment on June 17, 2012, at a rate of six percent, in the amount of $18,212.19.[5]  In total, the Court recommends that Gulf is entitled to recover the principal and the interest due on the Term Loan in the amount of **$378,833.59**, plus post-judgment interest at the lawful rate[6] on the total amount due on the Term Loan as of June 17, 2012 (the date of the entry of default judgment), until the satisfaction of the amounts due.

---

[3] Plaintiff is only seeking interest at the rate of six percent, and not at a rate of eight percent upon default as indicated by the Term Note.  (Hofsdal Supp. Decl. ¶ 4; Aff. ¶ 23.)

[4] Six percent per annum on the $1,518,000 balance of the Term Loan prior to January 12, 2011, is calculated to be $253 per diem (based on a 360-day year).  Accrued interest was determined by multiplying the per diem rate of $253 to the number of days (590) that elapsed between June 1, 2009, the start date of the payment cycle on which defendants defaulted, and January 12, 2011, the day on which the Mortgaged Premises' sale proceeds were applied to the balance of the Term Loan.  The Interest on the Term Loan is computed on a 30/360 basis; that is, the Term Loan requires that interest be calculated by applying the ratio of annual interest rate over a year of 360 days multiplied by the outstanding principal payment.  (Compl. Ex. B at 1.)

[5] Six percent per annum on the $211,351.40 unpaid balance of the Term Loan is calculated to be $35.23 per diem (based on a 360 day-year).  Accrued interest was determined by multiplying the per diem rate of $35.23 by the number of days (517) that elapsed between January 12, 2011, the day on which the Mortgaged Premises' sale proceeds were applied to the balance of the Term Loan, and June 17, 2012, when Default Judgment was entered in favor of BofA.

[6] Because there is no provision in the Term Loan that requires or suggests a deviation from the post-judgment interest rate set by 28 U.S.C. § 1961, interest shall be awarded to Gulf at a "rate equal to the weekly average one-year Constant Maturity Treasury yield ("CMT") as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961.  The one-year CMT rate for the week ending on June 15, 2012, was 0.18%. U.S. Dep't of Treasury, *Daily Treasury Yield Curve Rates* (June 8, 2012), http://www.treasury.gov/resource-center/data-cchart-center/interest-rates/Pages/TextView.aspx?data=yield.

**E.    Attorneys' Fees and Litigation Costs**

In New York, attorneys' fees are not recoverable in actions for breach of contract absent a contractual provision stating otherwise. *U.S. Fid. Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74-75 (2d Cir. 2004). "[W]hen a contract provides that in the event of litigation the losing party will pay the attorney's fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250 (2d Cir. 1987); *see also Diamond D Enterprises USA v. Steinsvaag*, 979 F.2d 14 (2d Cir. 1992) ("[B]ecause a fee-shifting clause can produce perverse incentives for a litigant, courts must scrutinize fee requests to ascertain whether they are reasonable.") (internal citations omitted).  In calculating costs, Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that: "[U]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).

According to ASESD's Term Note, the lender is obligated to pay reasonable attorneys' fees, expenses, and costs incurred to collect payment on the Term Note.  (Compl. ¶ 10; Compl. Ex. B.)  Kaish and Taub became liable for these expenses pursuant to their Guaranties.  (Compl. Ex. F.)  Gulf seeks an award of attorneys' fees and costs from the inception of counsel's representation of BoA associated with the Term Loan, from November 9, 2009, through May 29, 2012, in the amount of $58,835.69. (Hofsdal Supp. Decl. ¶¶ 4-5.)  Gulf also seeks attorneys' fees and costs incurred from May 29, 2012, through November 14, 2012, in the amount of $9,028.25. (*Id.*)

| Attorney | Rate(s) | Hours |
|---|---|---|
| Daniel F. Flores | $428/hour (Nov. 2009 – Jan. 2010)<br>$385/hour (Feb. 2010 – Nov. 2, 2012) | 30.85 hours |
| Linda K. Smith | $380/hour | 0.6 hours |
| Marie Polito Hofsdal | $341/hour (Nov. 9, 2009)<br>$330/hour (Nov. 9, 2010 – May 9, 2011)<br>$355/hour (May 10, 2011 – Nov. 2, 2012) | 149.55 hours |
| Tana Bucca | $330/hour | 0.2 hours |
| Amee Sampat | $305/hour | 1.4 hours |
| Leaor D. Schwartz | $250/hour | 1.2333 hours |
| Law Clerk | $60/hour | 0.3 hours |

### 1.    Hourly Rates and Hours Expended

The party seeking attorneys' fees must submit records that enable the Court to determine whether the fee is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Scott v. City of N.Y.*, 643 F.3d 56, 57 (2d Cir. 2011). The prevailing party should submit for each attorney contemporaneous billing records documenting the date, the hours expended, and the nature of the work done. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148, 1154 (2d Cir. 1983). Here, counsel for Gulf has submitted extensive and detailed time records. (*See* Aff. Exs. 6-8; Hofsdal Supp. Decl. 4-17.) The time records provide sufficient specificity to allow the Court to assess the reasonableness of the actions. *See, e.g., Trustees of Four Joint Boards Health and Welfare and Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 349-50 (S.D.N.Y. 1994).

Gulf is represented in this case by Wilson, Elser, Moskowitz, Edelman & Dicker, LLP ("Wilson"). Wilson formerly represented BofA in this action. Wilson's attorneys expended a

total of over 185 hours in their representation of BofA and Gulf. (Hofsdal Second Supp. Decl. ¶ 11.) The lead attorney was Daniel F. Flores, a partner who spent 30.85 hours working on this case. (*Id.*) His hourly rates varied, at either $428 per hour, (*see* Aff. Exs. 6-8), or $385 per hour. (Hofsdal Supp. Decl. 4-17.) Linda K. Smith, an attorney with thirty years of experience, billed at $380 per hour. (*Id.*) Marie Polito Hofsdal, a partner,[7] billed at varying hourly rates throughout Wilson's representation of BofA and Gulf. (*Id.*) Tana Bucca, an attorney with ten years of experience, billed at a rate of $330 per hour. (*Id.*) Amee Sampat, an attorney with approximately seven years of experience, billed at a rate of $305 per hour. (*Id.*) Leaor D. Schwartz, an associate with four years of experience, billed at a rate of $250 per hour. (*Id.*) Additionally, an unnamed Wilson law clerk worked for 0.3 hours on this case, at a rate of $60 per hour. (Hofsdal Second Supp. Decl. ¶ 11.) The records detail the tasks performed in response to: ASESD's default in 2009, the short sale and closing of the Mortgaged Premises in 2010; the revision of ASESD's deficiency balance and ultimate default; BofA's suit against ASESD and BofA's motion for default judgment. (Aff. Ex. 6.)

Wilson's rates in this case are reasonable in light of hourly rates approved by this Court. *See, e.g., Bank v. Ho Seo*, No. 06 Civ. 15445 (LTS) (RLE), 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010) (finding that rates of $385 per hour for bankruptcy partner and $245 per hour for associate was reasonable); *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (finding that a rate of $425 per hour for senior partner and $300 for associates, in a breach of contract case, was reasonable). Therefore, the Court recommends that counsel for Gulf, and formerly for BofA, is entitled to their claimed attorneys' fees and costs, in the amount of **$67,863.94**.

---

[7] Hofsdal was an associate at Wilson for part of her involvement in this case. (*See* Aff. Exs. 6-8.)

## IV.    CONCLUSION

In conclusion, I recommend that Gulf be awarded: the principal and interest on the Term Note, in the amount of **$378,833.59**, attorneys' fees and costs in the amount of **$67,863.94**, and post-judgment interest at the lawful rate on the total amount due BofA as of June 19, 2012, the date default judgment was entered.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 1650, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: August 29, 2014**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**